State your name and how much time you wish for your argument. Good morning, Your Honors. My name is Kate Schwartz. I'm here from the State Appellate Defender's Office on behalf of Alan Blanch. My argument will take approximately 15 minutes, and I would like to reserve 3 minutes for rebuttal, please. Good morning, Your Honors. I'm Peter Spitzer, and Assistant State's Attorney on behalf of the people. Fifteen minutes would be fine. Thank you. May it please the Court? Mr. Blanch raised three issues on appeal, and I will be happy to answer any of Your Honors' questions regarding the second and third issues, but my argument today will focus on Blanch's first claim regarding the prosecutorial misconduct that occurred at the close of his jury trial. Mr. Blanch never denied responsibility for committing the act that resulted in his girlfriend's death. The only issue before the jury was whether Blanch was entitled to a mitigated second-degree conviction, but there can be no confidence that the jurors properly considered Blanch's sole defense because, in closing argument, the State presented it as a defense of justification, thus confusing the jurors' understanding of the one issue it had to decide. There are four points that should lead this Court to find that prosecutorial misconduct deprived Blanch of a fair trial. Number one, the prosecutors repeatedly misstated the law of second-degree murder and, in one instance, went so far as to misname his defense. Number two, the trial court exacerbated the error by overruling Blanch's objections and making its own misstatement before the jury. Number three, proper instructions cannot be found to have cured the crucial misunderstanding that was planted in the jurors' minds during closing argument. And number four, the errors sufficiently prejudiced Blanch to cast doubt upon his verdict. To begin, the prosecutors misstated the law of second-degree murder in closing argument by portraying Blanch's claim that he was entitled to a... Let's start with the fact that you announced that there's 11 instances. Yes. And before the judge, the post-trial motion of the Memphis State was five. That's correct. And you had two months to look at the transcript and so forth and so on. Why should we even consider the six that weren't mentioned before? I mean, if they were that critical, you'd have plenty of time to talk about them. So why don't, off the bat, we just have five? Definitely. So the reason that this Court should not find the other comments to be waived, first and foremost, is because the Illinois Supreme Court in Wheeler had a similar situation. And there, the Court talked about the fact that even when certain statements are properly preserved and other misstatements are not, all of them should be considered as part of the entirety of the prosecutor's closing argument because the ones that are not objected to may add context to the ones that were objected to. And in this case, that's certainly true, where all of the misstatements are essentially the same. So it's really one error that this Court is reviewing. But in order to properly understand the extent of the misconduct and also the gravity of the prejudice, this Court really needs to look at all of the statements together because without doing so, you don't actually, the Court wouldn't be considering the full gravity of how many times the jurors heard the State make the same misstatement of law over and over again. And certainly, the number of times that it is repeated is relevant to the misconduct and to the way that it affected the jurors. So that's why this Court should review all of it. And while the Wheeler Court said that it was going to focus on the individual ones that had been actually properly preserved, it still said that it was going to review all of them. The Appellate Court has followed that same thing in People v. Beltran. It cited to Wheeler and said that it was going to consider both statements that were challenged and those that were not in order to view everything, all of the misconduct, in context of one another. So in addition to the fact that 11 misstatements were made here, in the sense that the prosecutors used justification language when talking about Mr. Blanche's defense, they also went one step further in the rebuttal closing argument and told the jury, he wants an excuse for first-degree murder. Don't let him hide behind the shield of self-defense. In this instance, the misconduct went beyond just suggesting to the jury that his defense was tantamount to claiming that his actions were justified and actually misstated what it is that he was asserting. Ultimately, by equating Mr. Blanche's incomplete defense of mitigation to a complete defense of justification, the state drastically and erroneously inflated Mr. Blanche's burden of proof. Now, the state in its brief did not discuss the most egregious of these comments, which was where they actually referred to him claiming self-defense. But with regard to the 11 other instances of justification being discussed, the state's foremost argument in its brief is that that's not a misstatement of law. This simply cannot be true in light of the fact that the law recognizes the distinction between these two contexts. But it wasn't really a question of legal definition. It was one of layman's understanding, isn't it, of what justification means? I mean, it wasn't in terms of the legal ramifications. Well, the prosecutors presented it as though what Mr. Blanche was claiming for his defense is that he was justified. And so they didn't say the definition is justification, but by clear implication they were telling the jury that they had to find something else. Krosnow is actually a very helpful case here in terms of understanding why this is a misstatement, because there the court found that the misstatement of law in effect distorted the burden of proof by incorrectly suggesting what the jury had to find to reach a certain verdict. And the same thing occurred here. The state, in effect, distorted Mr. Blanche's burden of proof by incorrectly suggesting to the jury that they had to find him to be justified in his actions in order to reach a second-degree murder verdict. It was never in the instructions. Pardon? It was never in the instructions. The word justification or justify is not in the instructions. That's correct. It is not in the instructions. The jury would follow the instructions. Well, the fact that the jury- It was an argument. It was a closing argument. That's true, Your Honor. Certainly it was a closing argument, and the fact that the jury was properly instructed under the pattern instructions is something that the state emphasizes in its brief. But with regard to that, the state cited three cases, Terry, Maloney, and Buckley. And notably, all of those are either distinguishable or unhelpful for the state. Buckley is the first case that is important to talk about, because there the misconduct was very similar to here. The state equated two distinct legal concepts, and that was found to be improper. There they equated recklessness to carelessness. And the Buckley court noted that the state was properly instructed on the definition of recklessness, but despite that actually reversed for a new trial, noting that the prejudicial effect of improper argument cannot always be erased from the jurors' minds by proper instructions. And so here, the fact that the jury was properly instructed on second-degree murder should not be found to have erased from the jurors' minds the fact that the state repeatedly argued in closing arguments that Mr. Blanche had to be justified in order for them to find that he was entitled to the mitigated conviction of second-degree murder. The other cases that the state cited for this proposition that the instructions were curative are Terry and Maloney. But in Terry, the court admonished the jury immediately after the objection that it would be the one to instruct the jurors on the law, and then they were correctly instructed. Actually, most of the cases that talk about whether instructions can cure a misstatement of law focus on simultaneous admonishments from the court and assess whether those are curative. And here, there were no simultaneous admonishments from the court because the court did not sustain the objections. It overruled each of the objections that were made and then went on to make its own misstatement in front of the jury. That's when, after the defense counsel objected and said that he believed the justification language was misleading, the court in front of the jury said, without lawful justification as contained in the murder instruction, justification overruled. And so he really added to the jurors' misunderstanding of the fact that justification was not actually relevant to Mr. Blanche's defense. Of course, they got no instruction that contained the word justification. That's correct, Your Honor. They did not. But even given the fact that they did not get it, they heard, in addition to hearing the prosecutors repeat this 11 different times and refer to his claim as self-defense, they heard the court overrule each of the objections, which the Smith and Fluker courts both recognized as being something that sanctions the error and effect before the minds of the jury and also reinforces the prosecutor's misconduct when proper objections to misstatements of law are overruled. But the court didn't just overrule them. Making this actual statement in front of the jury that justification was relevant at the very least confused them, even if they carefully went back and read the instructions later. And so that is why proper instructions should not be found to have cured the error here, because both the sheer number of times that this was repeated and the fact that the trial court exacerbated the error and ultimately the fact that the state has not pointed to a case where there are no admonishments but the simple giving of proper IPI instructions to the jury, there's no case that the state has pointed to where that in and of itself cures a misstatement of law and certainly not one where it cures 11 misstatements of law. What's your response to the state's argument that the defendant's closing argument provoked the state into misstating the law? Justice Neville, my response to that is that the state didn't point to anything in its brief that actually invited the error. So it's difficult to respond because I don't know what could have invited that error, but simply arguing that Mr. Branch was entitled to a second degree conviction certainly doesn't invite the state to suggest to the jury improperly that he was claiming his actions were justified, because he was not claiming that. He was claiming that he was acting under a sudden intense passion caused by provocation and that he was entitled to a mitigated conviction. And it's important to remember that justification is a term that the layman understands to mean that you have a legitimate reason for having done something, but mitigation is a much more nuanced idea that really requires jurors to be instructed on the law and to understand it and ideally not be misled repeatedly by one of the parties as to what that means, because mitigation isn't something that a layperson inherently understands to mean that it reduces somebody's culpability but doesn't justify that person's actions. Turning finally to the fact that Mr. Branch was sufficiently prejudiced here to have his verdict have been tainted, the standard for assessing whether a misstatement of law prejudiced a defendant is whether the appellate court asks whether it can say with a reasonable degree of certainty that the remark did not contribute to the verdict. And often that's found to be the case that they can't say that with a reasonable degree of certainty because of the closely balanced nature of the evidence. Here, Mr. Branch did present evidence that was sufficient, as the court found, to instruct the jury on second-degree murder. And ultimately it was for the jury to decide whether they believed Mr. Branch, whether they found him to be credible, and whether the evidence that he set forth was sufficient to entitle him to a mitigated conviction. Gutierrez and Buckley are both helpful cases here because these are both cases where prosecutorial error was recognized or two distinct legal concepts were equated. And in both instances, the court recognized prejudice. In Buckley, the court found that the distinction between the two concepts, their recklessness and carelessness, were crucially important to the finding of criminal liability. And so the court found prejudice because the misstatement of law could only serve to confuse the important distinctions. And again, I want to remind this court that the appellate court there in Buckley found prejudice despite the fact that the jury received proper instructions on recklessness and it was only in closing argument that they were told that it was essentially the same as carelessness. So that's very similar to here where second degree murder was properly instructed and it was only in closing argument, albeit 11 to 12 times if we count the self-defense statement, 12 times, that they were told that it's essentially the same as justification or self-defense. In Gutierrez, the court did not reverse, but that was based on a very unique combination of five factors that the court went to great lengths to point out was a virtually nonexistent likelihood of recurring again. And certainly that combination of factors didn't recur here. And the Gutierrez court still talks about the fact that equating recklessness to accident in that case was of the greatest potential prejudice for all of the misstatements that they recognized because it was very likely to deny the defendant a fair trial. And the reason they found that can directly apply in this case. Their involuntary manslaughter was the defendant's sole defense. Here, the sole defense was second degree murder. There, the court found that it was incredibly prejudicial because the argument that was made suggested that the jury could logically eliminate consideration of the sole defense because it was not possible to characterize that defendant's actions as accidental. The exact same thing applies here. It would not have been possible for the jury to view Mr. Blanche's actions as justified and thus they were essentially informed by the prosecutor by way of this argument that they could logically eliminate consideration of his sole defense because of the fact that they couldn't find his actions to be justified. If there are no other questions at this time, then we respectfully request that this court reverse and remand for a new trial. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. At trial and again here on appeal, our primary argument is that there was no misstatement of law. We have several procedural arguments as well, but you don't even need to get there when you look at the fact that the word justification was used. The word justification was never defined in a legal sense to this jury. Does justification appear in Section 59-2 of the Second Degree Murder Statute? Does it appear anywhere in there? It does not appear in the statute relating to provocation. It does appear in the imperfect self-defense portion. But it doesn't appear in the Second Degree Murder Statute, correct? It does appear in the Second Degree Murder Statute in the unreasonable belief in self-defense portion of the Second Degree Murder Statute. There's two prongs of the Second Degree Murder Statute. Does it appear in the instruction? Not in this case, no, because this was only a provocation case, Your Honor. This was not an unreasonable belief in self-defense case. Had the jury – there's two prongs of Second Degree Murder. One is the unreasonable belief in self-defense. Which is not the prong he was arguing about. It is not the prong that was involved in this case. Had that case – Why is it relevant? Why do you even discuss it? We don't. It's not discussed in this case. But you said it's not a misstatement of the law. It's not, because the term justification was not used in a legal sense, Your Honor. It was not defined as such. Whether it was used in a legal sense or not, it has a common meaning. It does. And justification, I think to most people, means it's okay. You're excused. Well, and in this case, if you put the comments in context, we have to remember what happened here. First of all, the State's Attorney stood up in closing argument, went through the facts of the case in detail. There was no objection to those. Those facts were properly relayed. Then the State's Attorney read verbatim the first-degree murder instruction and then read verbatim the second-degree murder instruction. No question that that was properly done. There's no question that the jury was properly instructed at the end of the case. There's also no question that the jury was told that closing arguments are, in fact, just arguments and not evidence. After reading those statements in complete verbatim context, the State's Attorney then explained why this wasn't a second-degree murder case. So if you want to call it mitigating factor, excuse, justification, whatever. But mitigation and justification really are two different things. Not in the way that the State's Attorney used them. If you go back to each of those times, he was using those and she was using those in a proper lay sense that this is not second-degree. And again and again and again during the closing argument, they referred back to the specific language of the second-degree provocation instruction talking about sudden and intense passion and what is and what isn't sudden and intense passion. The question is, was this jury confused as to what the issues in this case are? It's very clear that, you know, even the defense attorney in his closing argument, he's a very experienced defense attorney, he says, I guess it's up to you to figure out what intense passion is. That's essentially all this case was about. If you read these closing arguments, you can't step away and say that this jury didn't understand this was an either-or case. This is either that you accept the State's version, that there is no sudden and intense passion, or you accept the defense version. And it's clear in the context that that's what was happening. Furthermore, there were 11 comments cited today. As you will recall, at the end of trial, the defense attorney filed what you guess would be a boilerplate form motion saying the State committed cross-error in closing arguments. And Judge Sheehan said, that's not enough. Tell me what it is. So they get two months, two months later he comes back and he's got five of these 11, and not all five of the 11 were objected to at trial. So clearly this is something where almost every one of these was waived, because you have to have both object to trial and put it in your post-trial motion. But when the objections that were made to the references to justification were consistently overruled, it's really not incumbent upon defense counsel to keep standing up and standing up and standing up. Well, let's remember there wasn't a single objection during the State's closing argument to anything that was said. So the first six or seven times, nothing is said at all. It's only towards the end in rebuttal argument that these objections started to be made. So I would disagree that the defense attorney didn't have an obligation. If there was a problem with his language, he should have started right away instead of waiting until it had been said a bunch of times, and then at the end of rebuttal argument jumping up and saying this is improper. Again, if you look at each of these 11 instances, what the State's attorney is saying is that this is not sudden and intense passion. And the State's attorney is entitled to argue what is and isn't. And the fact that the word justification is used, certainly not in a legal sense, and moreover- Well, how's the jury supposed to know that? I mean, you say it's not in a legal sense. But how does a layman know? I mean, justification is not a word that people normally use. I mean, people don't go around, normal everyday people other than lawyers, go around and use the word justification. Well, first of all, the notion that justification and self-defense are the same thing, I think would certainly not be in the can of a layperson. Most lawyers don't even refer to it as justification instruction. It's a self-defense instruction. So I don't know that I would disagree that the average person would connote self-defense and justification as the same thing. And especially when you look at what the State's attorney is saying, you don't get the justification of second-degree murder. That's the first one. Okay, calling second-degree murder in this case justification, it's clear what he means is this isn't a second-degree murder case. So calling it the justification of second-degree murder, that doesn't raise the- first of all, the notion that it would raise their burden. If this is a justification case, they have no burden whatsoever. It's our burden to disprove justification if this were a self-defense case. It's not a self-defense case. Their burdens only come up when it's a second-degree case, and they have to prove by a preponderance of the evidence that it's either an unreasonable belief in self-defense or a provocation situation. So this notion that we elevated the burden is actually incongruent with what was happening here. The second one is you don't get to justify this and say, well, it's second-degree because. So, again, it's tied directly into second-degree. It's not tied into-and the only second-degree instruction they got is the one here, using the term, you know, provocation, and provocation is defined, and the sudden and intense passion. It's very clear that the jury knew what was going on in this case. The third-and, again, those first two weren't objected to. They weren't in the post-trial motion. And even if you believe for a second that she was swinging and throwing punches, really, that gives you the justification to strangle somebody, and then after they stop fighting, this is not second-degree. This isn't even close. Again, it's always tied into the specific second-degree language. Then there's another one. And bring it back to this mitigating factor, a sudden and intense passion resulting from serious provocation. Conduct sufficient to excite an intense passion in a reasonable person. How reasonable is this? It's completely unreasonable. That's why second-degree does not apply with these facts. Again, tied specifically to the language of the instruction. I'm breaking up with you. Get out of my life. I gave you a portion. I'm justified in strangling you to death. Again, these have to be looked at in context. They're very clear. The Supreme Court's told us again and again, the whole argument in context. If you look at this in context, no reasonable juror could be confused at what was going on in this case. I could go through each of these arguments. And again, I still haven't gotten to one that's preserved in any way whatsoever, not in the post-trial motion, not objected to at trial. And again, this continues through the 11. And some of them don't even actually contain the word justified. The bottom line is, Your Honors, this case was not a case where the jury was misinstructed as to the law. They were very clear as to what the law is. It's also very clear that the jury was properly instructed at the end of this case. There's no doubt about that. Even in cases where it could be said that the prosecutor misstated the law, those cases can still be affirmed if the jury is properly instructed. The prosecutor did not misstate the law in this case. The prosecutor properly instructed, properly stated the law. That's not what they're complaining about. It is. It is. They're claiming that the prosecution confused the jury by misstating the law of second offense. And the prosecutor never misstated the law of second offense. They used the term justification in a lay sense that, again, as I pointed out, in context, was perfectly proper. And for those reasons, Your Honor, we'd ask that the Court affirm defendant's conviction in the sentence. Thank you. Your Honors, with all due respect, I have to say that it seems that the State is still continuing to obscure the issue here. The State says, if you want to call it mitigation, if you want to call it justification, the issue here is not that the prosecutors simply used the word justification. It's that they blatantly equated misstating the law of second offense with misstating the law of second offense. They equated Mr. Blanche's defense to a defense of justification, which is not what he was claiming. And they did so very clearly. One of the challenge statements is very simple. There is no justification for what he did. There is no second-degree murder. This is only one of the 11 instances where the jury was basically told, you can't find second-degree murder because you can't find his actions to be justified. And as Justice Mason pointed out, a layperson understands justification to mean that there's a legitimate excuse. They didn't have to hear justification and think that means self-defense is being asserted here, although they very likely could have found that when the prosecutor went so far as to blatantly tell them, don't let him hide behind the shield of self-defense. The State also argues that it's very clear that the jurors knew what it is they were supposed to be deciding. But there's no indication of why it's so clear that they knew that. And the question for this Court is whether we can be very certain that the verdict could not have gone the other way without these improper remarks. The question isn't, is it not clear that the jury knew? Well, no. And I think Gutierrez is actually very helpful on this point, because in Gutierrez, quite the opposite of here, where it's not at all clear what the jury didn't know. In Gutierrez, one of the five factors that prompted the Court to affirm as opposed to reverse and remand is the fact that the jury had sent out a note that gave the reviewing court certainty that the jurors actually understood that they had to be considering recklessness, because the note indicated to the reviewing court that they weren't thinking of this as accidental. And that was one of five factors. Additionally, the Court had sustained all of the objections and admonished the jurors simultaneously. That also didn't happen in this case. How critical to your argument is what the judge had to say about justification? It's not critical. I think that this Court could still find, certainly could find error without it, because the errors on the prosecutor's part, this simply exacerbated it. I think it definitely adds to the prejudice in this case. And I think even if he had overruled the objections, that in and of itself would be sufficient. Notably, in the Buckley case, the Court there reversed and remanded for a new trial where the prosecutor equated these two distinct legal concepts, and they reviewed finding plain error. There, no objections were made at all. And so the Court didn't overrule any proper objections and didn't admonish the Court. And still, the reviewing court found that a new trial was warranted. By sustaining the objections, didn't the judge compound the problem? By overruling the objections, yes, the Court did compound the problem. And the appellate court has recognized that. Smith and Fluker are both cases. Actually, in Fluker, the Court sustained some of the objections and also admonished the jury as to, in some instances, that it was not the defendant's burden of proof. And even despite that, the Court found that just the fact that certain objections were overruled exacerbated the error and reinforced the prosecutor's misconduct. And so, same thing in Smith. The appellate court said in Smith that by overruling objections to three of the prosecutor's remarks, it, in effect, sanctioned the error that was caused by the prosecutor's misstatements of law. I think the final point to leave with here is the fact that the State tells this Court it's very clear what they knew, and there's no misstatement of law here. But ultimately, the State doesn't distinguish ample case law telling this Court that an error occurred here and that the error was prejudicial. There are numerous cases. Gutierrez is a case that was discussed at length. The State did not distinguish that. Buckley is a case that the State cited. In both of these, the error is very analogous to here. In Fluker, the Court also found prosecutorial error and reversed and remanded where the misstatements actively distracted the jurors from the issues. We could say that that's comparable to this as well. The jurors were actively distracted from the fact that they had to consider provocation because they were repeatedly told that Mr. Blanche was not justified in his actions. And with regard to the issue of waiver, the Court also doesn't distinguish Wheeler. We have Illinois Supreme Court precedent as well as appellate court precedent following that saying that where some of the misstatements are preserved, the Court should look at the entire closing argument. And here, it's necessary to look at the entire closing argument to get context for the fact that these misstatements were repeated 11 different times and then in addition that the jurors were told that Mr. Blanche was asserting self-defense when certainly he was not. I think there can be no confidence here that the jury really understood, particularly in light of what the judge said, that they had to consider whether or not Mr. Blanche was sufficiently provoked in order to decide whether or not to mitigate his conviction. And for those reasons, we ask this Court to reverse and remand for a new trial. Thank you. Thank you, Your Honors. I thank both Ms. Schwartz and Mr. Fisher. As usual, your arguments are well done and so are your briefs. I'll take it under advisement. Thank you very much.